**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRITTNEY L. BLUE, Special Administrator of the Estate of FORREST BLUE, Deceased,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL FOOTBALL LEAGUE, INC., a corporation ("NFL"); and RIDDELL, INC., a corporation, f/k/a EN&T ASSOCIATES, INC., RIDDELL SPORTS GROUP, INC., a corporation; ALL AMERICAN SPORTS, a corporation; EASTON-BELL SPORTS INC., a corporation; EASTON-BELL SPORTS, LLC., a Limited Liability Company; EB SPORTS, a corporation; and RGB HOLDINGS, a corporation; (collectively "RIDDELL"),<br><br>    Defendants. | No. 13 C \_\_\_\_ |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that, for the reasons set forth below, Defendant National Football League ("NFL"), by its undersigned attorneys, files this Notice of Removal to remove the claims against it in this action from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1367, 1441 and 1446. Removal is made pursuant to 28 U.S.C. § 1331 on the basis of federal question jurisdiction. The grounds for removal are as follows:

**I.  INTRODUCTION AND BACKGROUND**

  1.  On August 1, 2013, the NFL waived service of a Complaint (the "Complaint") filed by Brittney L. Blue, as Special Administrator of the Estate of Forrest Blue, ("Plaintiff") in the Circuit Court of Cook County, Illinois, No. 2013 L 008032.

Copies of the Complaint and other documents filed in this action are annexed as **Exhibit A**.

2. The Complaint alleges that Forrest Blue ("Blue") purportedly "died . . . of complications related to Chronic Traumatic Encephalopathy" ("CTE") and that the "cumulative effect of [Blue's] concussive brain trauma and/or playing through these brain traumas during his NFL playing career caused . . . CTE to develop in his brain." (Compl. ¶¶ 2, 18.) The Complaint further alleges, among other things, that the NFL failed to "implement policies to prevent [Blue] from returning to a game or practice in which he sustained a head injury," failed to "regulate and monitor practices, games, equipment and medical care so as to minimize the long-term risk associated with repetitive brain injuries suffered by [Blue]," and "continuously refuted, denied, and inaccurately professed that chronic brain damage in former NFL football players was not a result of brain trauma sustained in the players' NFL careers." (Compl. ¶¶ 22(f), 22(h), 44.) The Complaint purports to allege various causes of action for negligence (Counts I, II, VII and VIII), fraudulent concealment (Counts III and IV), and misrepresentation (Counts V and VI) against the NFL. The Complaint also purports to allege causes of action for strict liability (Counts IX and X) and negligence (Counts XI and XII) against Riddell, Inc. f/k/a EN&T Associates, Inc., Riddell Sports Group, Inc., All American Sports, Easton-Bell Sports Inc., Easton-Bell Sports, LLC, EB Sports, and RGB Holdings (collectively, "Riddell"). Plaintiff seeks recovery of damages "for a sum in excess of the minimal jurisdictional limit for the Law Division for the Circuit Court of Cook County, Illinois. (Compl. pp. 6, 11, 21, 32, 34, 35, 45, 54, 58, 61-62, 65, 69.)

3. The relationship between the NFL and Blue was governed by various collective bargaining agreements ("CBAs"), the accompanying NFL Constitution and Bylaws, and the Standard Player Contract, that were executed and operative during Blue's career.[1] The CBAs were the product of exhaustive arm's-length negotiations between the NFL Management Council (the exclusive bargaining representative of the NFL) and the NFL Players Association (the exclusive bargaining representative of NFL players), and "represent[] the complete understanding of the parties on all subjects covered [t]herein." (NFL CBA Art. II § 1 (1977); *see also* NFL CBA Preamble and Art. I § 2 (1968); NFL CBA Preamble and Art. II § 4 (1970).) The CBAs, NFL Constitution and Standard Player Contract include, among other terms, provisions relating to player medical care and safety, rule-making and dispute resolution.

## II. GROUNDS FOR REMOVAL

4. This Court has original jurisdiction of this action under 28 U.S.C. § 1331 because the action is one that is founded on a claim or right "arising under the Constitution, laws, or treaties of the United States." A defendant may remove an action to federal court under 28 U.S.C. § 1441 if the complaint presents a federal question, such as a federal claim. *See Avco Corp.* v. *Aero Lodge No. 735*, 390 U.S. 557, 560, 88 S. Ct. 1235, 1237, 20 L. Ed. 2d 126 (1968).

5. Federal question jurisdiction exists in this case based on complete preemption under section 301 of the Labor Management Relations Act ("LMRA") of Plaintiff's claims. *See Sluder* v. *United Mine Workers of Am., Int'l Union*, 892 F.2d 549,

---

[1] Blue played in the NFL from 1968 to 1978. (Compl. ¶¶ 7-8.) Thus, he played football in the NFL pursuant to the 1968, 1970 and 1977 NFL CBAs.

556 (7th Cir. 1989) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. . . . Thus, state-law claims preempted by section 301 are properly removable to federal court despite a plaintiff's failure to plead explicitly a federal cause of action."); *Duerson* v. *Nat'l Football League*, No. 12-C-2513, 2012 WL 1658353, at *2 (N.D. Ill. May 11, 2012) ("Even when a lawsuit raises only state law claims, the lawsuit can still arise under federal law if a federal cause of action completely preempts a state cause of action.") (internal quotation marks omitted).

      6.    To the extent that any claim in the Complaint is not preempted, it "form[s] part of the same case or controversy." 28 U.S.C. § 1367(a). This Court thus has supplemental jurisdiction over all parties and claims. *See Ervin* v. *OS Restaurant Servs., Inc.*, 632 F.3d 971, 979 (7th Cir. 2011) ("Section 1367(a) grants the district courts supplemental jurisdiction to hear all other claims that are so related to the claims over which they have original jurisdiction that they form part of the same Article III case or controversy."); *Duerson*, 2012 WL 1658353, at *6 ("Federal jurisdiction thus exists over [Duerson's negligence] claim, and the court can exercise supplemental jurisdiction over the rest of Duerson's claims.").

      7.    Section 301 of the LMRA provides that the federal courts have original jurisdiction over all "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The Supreme Court has held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to

uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 211, 105 S. Ct. 1904, 1911, 85 L. Ed. 2d 206 (1985); *see also Sluder*, 892 F.2d at 555-56 (holding that plaintiff's negligence claim was preempted because the claim "can be resolved only by defining the precise nature of the duty assumed by [Defendant], and that duty can be defined only by reference to the collective bargaining agreement"). Thus, section 301 preempts tort claims seeking to vindicate "state-law rights and obligations that do not exist independently of [collective bargaining] agreements" and also claims "substantially dependent upon analysis of the terms of [a collective-bargaining] agreement." *Allis-Chalmers*, 471 U.S. at 213, 220; *Scholl* v. *Rogers Ready Mix*, No. 03 C 50495, 2004 WL 793552, at *2 (N.D. Ill. Apr. 12, 2004) (holding that plaintiff's promissory estoppel and fraud claims were preempted by section 301).

        8.      Here, Plaintiff's claims are preempted because resolution of those claims is "inextricably intertwined with consideration of the terms of [the CBAs]" or "substantially dependent" on an analysis of the relevant provisions of the CBAs. *Allis-Chalmers*, 471 U.S. at 213, 215, 220; *see also Sluder*, 892 F.2d at 552 ("Plaintiffs' 'artfully pled' [negligence] claims are 'inextricably intertwined' with a construction of the collective bargaining agreement and thus preempted by Section 301 of the Labor Management Relations Act."); *Duerson*, 2012 WL 1658353, at *4, 6 (concussion-related negligence claim against NFL preempted); *Maxwell* v. *Nat'l Football League*, No. 11-cv-08394 R(MANx), Order at 2 (C.D. Cal. Dec. 8, 2011) (same); *Pear* v. *Nat'l Football League*, No. 11-cv-08395 R(MANx), Order at 2 (C.D. Cal. Dec. 8, 2011) (same); *Barnes* v. *Nat'l Football League*, No. 11-cv-08395 R(MANx), Order at 2 (C.D. Cal. Dec. 8,

2011) (same); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 909-10 (S.D. Ohio 2007) (wrongful death claim arising out of heat-related illness against the NFL preempted because resolution of the claim was substantially dependent upon an analysis of CBA provisions related to NFL player medical care and treatment).

9. For example, resolution of Plaintiff's claims will require interpretation of provisions of the CBAs relating to player medical care. *See, e.g.*, Constitution and By-Laws for Major Professional Football Operations Conducted by the National Football League and the American Football League, Art. XIX § 19.5 (1968-1969), NFL Constitution and Bylaws Art. XIX § 19.5 (1970-1978) (requiring that the home team provide a doctor and ambulance for each game);[2] NFL CBA Art. V §§ 1-4 (1970), Art. XI § 8 (1977) (creating a Joint Committee to study, among other things, player safety issues); Standard Player Contract ¶ 14 (requiring member clubs to provide medical care as deemed necessary by their physicians in the event a player is injured);[3] *see also* 1977 NFL CBA Art. VII (setting forth grievance procedures for "any dispute . . . involving the interpretation or application of, or compliance with, provisions of this Agreement . . . the NFL Player Contract . . . and the NFL Constitution and Bylaws . . . ."). The Court will be required to interpret these provisions to determine the scope of the

---

[2] *See Clarett* v. *Nat'l Football League*, 369 F.3d 124, 142 (2d Cir. 2004) ("In the [CBA], the union agreed to waive any challenge to the Constitution and Bylaws and thereby acquiesced in the continuing operation of the . . . rules contained therein."); *see also Brown* v. *Nat'l Football League*, 219 F. Supp. 2d 372, 386 (S.D.N.Y. 2002) ("[The NFL Constitution and Bylaws were] bargained over and included within the scope of the CBA.").

[3] *See Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1177 (N.D.N.Y. 1990) ("The standard player agreement, which is used for every NFL player as required by Article XII, section 1 of the [1982] CBA, is effectively incorporated by reference in that article.")

NFL's duty and to determine whether the NFL acted reasonably in light of those provisions. *See Duerson*, 2012 WL 1658353, at *4.

10. Indeed, two separate district courts—including another court in this District—considering allegations similar to those alleged here recently determined that the NFL properly removed complaints brought by former NFL players because resolution of their concussion-related negligence claims was substantially dependent on, and inextricably intertwined with, an analysis of CBA provisions concerning medical care and treatment of NFL players. In *Duerson*, faced with a negligence claim alleging in part that the NFL "fail[ed] to educate players about the risks of concussions and the dangers of continuing to play after suffering head trauma," and "fail[ed] to implement policies and procedures to prevent David Duerson from returning to play with his injuries," a court in this District held that the claim was preempted because resolution of the claim would require a court to interpret several of the CBA provisions concerning player health and safety. *Id.* at *1, 4. The court reasoned that:

> "A court could plausibly interpret those provisions to impose a duty on the NFL's clubs to monitor a player's health and fitness to continue to play football . . . . The NFL could then reasonably exercise a lower standard of care in that area itself. Determining the meaning of the CBA provisions is thus necessary to resolve Duerson's negligence claim."

*Id.* at *4; *see also Maxwell*, Order at 1-2; *Pear*, Order at 1-2; *Barnes*, Order at 1-2 (holding that plaintiffs' concussion-related negligence claims, premised in part on allegations that the NFL failed "to ensure accurate diagnosis and recording of concussive brain injury so the condition can be treated in an adequate and timely manner," were preempted because "[t]he physician provisions of the CBA must be taken into account in determining the degree of care owed by the NFL and how it relates to the NFL's alleged

7

failure to establish guidelines or policies to protect the mental health and safety of its players."); *Stringer*, 474 F. Supp. at 909-10 (wrongful death claim brought by decedent's widow against the NFL based on, among other things, the NFL's alleged failure to regulate adequately practices, games, equipment, and medical care to minimize the risk of heat-related illness, was preempted because resolution of the claim was "inextricably intertwined and substantially dependent upon an analysis of certain CBA provisions imposing duties on the clubs with respect to medical care and treatment of NFL players"). Having determined that at least one federal claim was present, this Court in *Duerson* exercised supplemental jurisdiction over the remaining claims, and denied the motion to remand. *Duerson*, 2012 WL 1658353, at *6; *see also Maxwell*, Order at 2; *Pear*, Order at 2; *Barnes*, Order at 2.

    11. Although the relevant provisions in the applicable Constitutions and Standard Player Contract differ from the provisions on player health and safety in the CBAs analyzed by the *Duerson*, *Maxwell/Pear/Barnes*, and *Stringer* courts, their substance is the same: the Constitutions and Standard Player Contract, like the later CBAs, place on the member clubs the responsibility to provide medical care to NFL players. *See*, *e.g.*, 1978 NFL Constitution Art. XIX § 19.5 (requiring that the home team provide a doctor and ambulance for each game); Standard Player Contract ¶ 14 (requiring member clubs to provide medical care as deemed necessary by their physicians in the event a player is injured); *see also* 1977 CBA Art. XXXIII § 1 (establishing a duty of the member clubs to provide compensation for workplace injuries by requiring clubs in states where workers' compensation coverage is not compulsory to "either voluntarily obtain [workers' compensation] coverage under the compensation laws of that state or otherwise

guarantee equivalent benefits to its players"). Thus, in resolving Plaintiff's claims, the court will need to interpret these provisions to determine the scope of the NFL's alleged duty to Blue and whether the NFL acted reasonably.

12. Plaintiff's claims also are preempted by section 301 because the purported duties to Blue that Plaintiff alleges the NFL had and breached were created by the CBAs and are not based on an independent duty "owed to every person in society." *See United Steelworkers of Am.* v. *Rawson*, 495 U.S. 362, 370-71, 110 S. Ct. 1904, 1910, 109 L. Ed. 2d 362 (1990) (holding in the context of a labor dispute involving unionized employees that, absent an independent duty running from defendants "to every person in society," any such duty to plaintiffs must arise out of the CBA); *see also Tifft* v. *Commonwealth Edison Co.*, 366 F.3d 513, 520 (7th Cir. 2004) (holding that plaintiffs' wrongful termination claims were preempted because the statute under which plaintiffs' purported to bring the claims "does not provide the plaintiffs with rights independent of the CBA"). Plaintiff's claims hinge fundamentally on the NFL's purported failure to implement adequate rules, regulations, and guidelines regarding player health and safety. (*See, e.g.*, Compl. ¶¶ 16, 22.) The CBAs and NFL Constitution, however, establish the duty of the NFL and its member clubs to implement and enforce rules regarding professional football. *See* , *e.g.*, 1978 NFL Constitution Art. XI § 11.2 (delegating to the NFL, and its member clubs, the obligation to "amend[] or change[]" all "[p]laying rules," and further requiring that all proposed rule changes be presented to the NFL prior to a vote).

### III. REMOVAL IS PROCEDURALLY PROPER

13. The Northern District of Illinois is the federal district in which the Circuit Court of Cook County, Illinois—where Plaintiff filed her Complaint—is located.

9

14. This Notice of Removal is timely under 28 U.S.C. § 1446(b), which states that "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

15. Written notice of the filing of this Notice of Removal will be provided to Plaintiff, and a copy of this Notice will be filed in the appropriate state court, as required by 28 U.S.C. § 1446(d). This Notice of Removal is signed pursuant to Fed. R. Civ. Proc. 11. *See* 28 U.S.C. § 1446(a).

16. Counsel for Riddell has consented to the removal of the action. All defendants thus have consented to removal of the action. *See Townsquare Media, Inc.* v. *Brill*, 652 F.3d 767, 770 (7th Cir. 2011) ("For cases governed by 28 U.S.C. § 1441(a)—the general statute authorizing removal from state courts to federal district courts of cases presenting claims arising under state law—all defendants must consent for removal to be effective.").

17. In filing this Notice of Removal, the NFL does not waive any defenses that may be available, including without limitation jurisdiction, venue, standing, or procedures for the disposition of this action in accordance with the terms of the CBA. Nor does the NFL admit any of the factual allegations in the Complaint; rather, the NFL expressly reserves the right to contest those allegations at the appropriate time.

WHEREFORE, the NFL removes the above-captioned action brought against it in the Circuit Court of Cook County, Illinois.

Dated:  August 13, 2013

                                             Respectfully submitted,

                                             */s/ Jeffrey Baltruzak*

                                             Jeffrey E. Stone
                                             William P. Schuman, P.C.
                                             Jeffrey Baltruzak
                                             McDERMOTT, WILL & EMERY LLP
                                             227 W. Monroe, Suite 5200
                                             Chicago, Illinois 60606
                                             (312) 372-2000


                                             Brad S. Karp
                                             Theodore V. Wells, Jr.
                                             Beth A. Wilkinson
                                             Lynn B. Bayard
                                             *(Pro Hac Vice Applications to be filed)*
                                             PAUL, WEISS, RIFKIND, WHARTON &
                                             GARRISON LLP
                                             1285 Avenue of the Americas
                                             New York, New York 10019-6064
                                             (212) 373-3000

                                             *Attorneys for the National Football League*

## **CERTIFICATE OF SERVICE**

I certify that on August 13, 2013, I caused a copy of the foregoing Notice of Removal to be served on the below counsel at the following addresses via electronic mail and messenger (for Chicago counsel) and Federal Express (for out of state counsel), postage prepaid:

Thomas A. Demetrio
William T. Gibbs
Corboy & Demetrio, P.C.
33 North Dearborn Street, 21st Floor
Chicago, Illinois 60602
(312) 346-3191

John J. Pappas , Sr.
Pappas Healy & Pappas LLC
30 West Monroe Street, Suite 800
Chicago, Illinois 60603
(312) 782-5363

Thomas P. Branigan
Bowman and Brooke LLP
41000 Woodward Ave., Ste. 200 East,
Bloomfield Hills, Michigan 48304
(248) 205-3300

*/s/ Jeffrey Baltruzak*

DM_US 44265379-1.071483.0023